**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHARLES G. BROWN,**

    **Plaintiff,**

vs.                                      Case No.: 4:19-CV-429-MW/MAF

**LESLIE COLOMBANI,**
**et al.**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Charles G. Brown, an inmate proceeding *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis*. ECF No. 5. This Cause is currently before the Court upon the motions to dismiss filed separately by Defendant Colombani and Defendant Gaylord. ECF Nos. 39 and 40.

After careful review, for the reasons stated, it is recommended that the motions to dismiss should be GRANTED and the case be DISMISSED.

**I.   Plaintiff's Complaint, ECF No. 1.**

Plaintiff, a transgender[1] inmate, initiated this case on August 28, 2019,

---

[1] Because Plaintiff was born male but identifies as a woman, the Report uses the "she" pronoun when referring to Plaintiff.

by filing a complaint originally naming three medical officials employed by Hamilton Correctional Institution (Hamilton):

1. Leslie Colombani, senior medical doctor
2. Ms. Gaylord, supervisor of the medical department
3. A. Castleberry, licensed psychologist

ECF No. 1, p. 2. Plaintiff does not state whether she is suing Defendants in their individual- or official capacities. Id. However, because *pro se* fillings are entitled to liberal construction, the Court construes Plaintiff's complaint as suing Defendants in both their individual and official capacities. See Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Plaintiff filed a motion to withdraw the claims against Defendant Castleberry, which the Court granted. ECF Nos. 9, 11. Only the allegations against Defendants Colombani and Gaylord remain.

Plaintiff received treatment for her gender dysphoria (GD)[2] while housed at Hamilton. See id., generally. Plaintiff alleges that in January 2019, Colombani evaluated Plaintiff and issued her a bra pass. Id. Colombani told Plaintiff the paperwork for the hormone treatment was completed but advised that Dr. Castleberry would need to make a final decision. Id. Plaintiff filed a

---

[2] The terms gender dysphoria (GD) and gender identity disorder (GID) are used interchangeably.

Case No.: 4:19-CV-429-MW/MAF

grievance when she was not issued a bra; and Colombani responded that medical unit does not issue bras or bra passes. Id., p. 6. Plaintiff claims that she filed a grievance in February 2019 to obtain hormone treatment for her condition. Id., p. 5. Plaintiff was approved for both treatment and additional evaluations. Id., p. 5. In February and March, Plaintiff was evaluated by Colombani who reviewed and renewed Plaintiff's hormone pills. Id. According to Plaintiff, at some point, Colombani discontinued the hormone treatment while Plaintiff was transitioning, without conducting lab work and without evaluating Plaintiff. Id. Colombani told Plaintiff she did not meet the hormone treatment criteria. Id., p. 7. Plaintiff complained to Colombani several times in writing that since stopping the hormone treatment she had "major headaches" and "vomiting." Id., p. 6.

Plaintiff admits that Dr. Castleberry informed her that she was "denied the [GD] program" because she was never evaluated for gender dysphoria. Id., p. 7. Plaintiff claims that she attempted to contact the medical supervisor, Defendant Gaylord, about the situation and that it was unconstitutional, but Gaylord did not respond. Id. Plaintiff alleges that her family also spoke to Gaylord about her medical condition. Id. Plaintiff alleges that she saw Nurse Booth for a sick call on June 21, 2019, claiming she had not had her medications for two weeks and discussed hormone treatment; however,

Booth told Plaintiff the hormone treatment was discontinued because Plaintiff refused to submit to laboratory work. Id., p. 8. Plaintiff claims that she told Booth she refused labs because they were for her seizures. Id. Two weeks later, Booth told Plaintiff she was not getting hormones and refused to allow Plaintiff to see the doctor. Id. Plaintiff did not name Booth as a defendant in the complaint. See ECF No. 1 generally.

Plaintiff claims her counselor, P. Hester, told her the discontinuation of hormone treatment amounted to a constitutional violation. Id. Plaintiff saw Dr. Castleberry on August 25, 2019, and claims they discussed the reasoning for the transgender team's refusal to conduct any evaluation. Id. Castleberry promised to put Plaintiff in the program and did another interview. Id. Plaintiff claims that there was nearly a one-year delay. Plaintiff reiterates that Colombani was "reckless [in] starting [Plaintiff] on hormones and just stop[ing]" the regimen without an evaluation. Id.

Plaintiff seeks compensatory damages in the amount of $50,000, a general injunction, and punitive damages in the amount of $10,000. Id., p. 9. Plaintiff is currently housed at Charlotte Correctional Institution (Charlotte).

## II.   Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla.,

Case No.: 4:19-CV-429-MW/MAF

Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

## III. Defendants' Motions to Dismiss

A. Defendant Colombani's Motion to Dismiss, ECF No. 39.

Colombani asserts that Plaintiff fails to state a claim for compensatory or punitive damages because there are no allegations of physical injury as a result of Colombani's alleged conduct. ECF No. 39, p. 2. As outlined by Colombani, Plaintiff did not allege that Colombani refused to issue the sports bra or had the authority to issue the sports bra. As to the hormone prescription, Plaintiff's alleged side effects do not constitute more *than de minimis* physical injury. Colombani maintains that Plaintiff is not entitled to punitive damages because there is no physical injury and relies on various cases including Al-Amin v. Smith, 637 F.3d 1192, 1198 (11th Cir. 2011); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007); and Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000).

In addition, Colombani asserts that Plaintiff is not entitled to injunctive relief because: (1) injunctive relief is not available when Plaintiff sues Colombani in his individual capacity; (2) Plaintiff cannot demand injunctive relief from Colombani when she is no longer housed where Colombani is employed; (3) Plaintiff has not articulated what conduct Plaintiff seeks to

prevent or enjoin; and (4) Plaintiff claims she was injured by past conduct but cannot show the conduct will reoccur. ECF No. 39, pp. 3, 11-12.

Colombani further argues that Plaintiff has failed to state a claim of deliberate indifference to a serious medical need because Plaintiff's claim essentially amounts to a difference in medical opinion. Id., pp. 14-20. Finally, Colombani asserts he is entitled to qualified immunity because Plaintiff fails to allege a constitutional violation. Id., pp. 20-22.

B. Defendant Gaylord's Motion to Dismiss, ECF No. 40.

Defendant Gaylord raises similar defenses. Gaylord asserts that Plaintiff's claims for compensatory and punitive damages fail because Plaintiff did not suffer a physical injury; injunctive relief is not recoverable because Plaintiff is no longer housed at the institution where Gaylord works; and, because Plaintiff fails to allege a constitutional violation or violations of clearly established law, Gaylord is entitled to qualified immunity. ECF No. 40, pp. 1-3, 5-15. Additionally, Gaylord asserts Plaintiff's *respondeat superior* or vicarious liability claims fail because Plaintiff does not allege Gaylord personally participated in the underlying violation and cannot demonstrate a causal connection to Plaintiff's alleged constitutional violation. Id., pp. 15-17. Plaintiff's failure to state a claim for any constitutional violation means that Gaylord is entitled to qualified immunity. Id., pp. 17-19.

## IV.   Plaintiff's Response, ECF No. 44.

Plaintiff filed an unsworn "opposition" to Defendants' motions to dismiss. ECF No. 44. Plaintiff repeats her allegations that Defendant Colombani prescribed hormones, discontinued the prescription without further examination, and gave Plaintiff a pass for a sports bra but not the actual bra. Id., p. 1. Plaintiff claims she was taking "Blackmarket" hormones prior to her incarceration. Id., p. 2. Plaintiff admits that Colombani told Plaintiff, "they must give you a sports bra because this is a part of your uniform." Id. Plaintiff claims that Colombani advised that the medical department will order some "2x sports bras," but Plaintiff never received them. Id. Plaintiff asserts that the discontinuation of hormone therapy caused Plaintiff to be ill. Id., p. 5. Plaintiff claims that Mrs. Wiggins, at Hamilton C.I., advised Plaintiff there was a meeting every Thursday regarding transgender inmates but refused to acknowledge why Plaintiff's hormones were stopped or refused a sports bra. Id., p. 5. Wiggins is not a party to this suit.

Plaintiff does not deny any of Defendants' affirmative defenses.

## V.   Discussion

A. <u>Plaintiff is Restricted from Seeking Compensatory and Punitive Damages under the Prison Litigation Reform Act (PLRA)</u>.

As a prisoner, Plaintiff's claims are governed by the PLRA, the purpose of which is "to reduce the number of frivolous cases filed by imprisoned

Case No.: 4:19-CV-429-MW/MAF

plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002). For this reason, "the ability of prisoners to seek judicial relief and the form such relief may take" is restricted. Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011). The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e.

The Eleventh Circuit has held that "punitive damages are precluded under the PLRA in the absence of physical injury." Al-Amin, 637 F.3d at 1199. In fact, "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than *de minimis*) physical injury." Brooks v. Powell, 800 F.3d 1295, 1307-1308 (11th Cir. 2015) citing Al-Amin, 637 F.3d at 1198 and Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999) reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970). Plaintiff's temporary symptoms resulting from the discontinuation of hormonal treatments are not more than *de minimis* injuries. See Chatham v. Adcock, 334 F. Appx. 281 (11th Cir. 2009)

Case No.: 4:19-CV-429-MW/MAF

(withdrawal symptoms resulting from the discontinuation of Xanax were not more than *de minimus* injuries). For these reasons, Plaintiff's claims for compensatory or punitive damages are precluded and should be DISMISSED.

It is worth noting, however, that the PLRA does not prevent "a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury." Id. at 1308. Although Plaintiff does not seek nominal damages in his suit, allowing Plaintiff to amend the complaint to include nominal damage claims would be futile because, as set forth below, Plaintiff cannot sufficiently state a claim for a constitutional violation.

B. <u>Plaintiff Fails to State a Claim of Deliberate Indifference to a Serious Medical Need Against Defendants</u>.

Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-05 (1976). To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)

Case No.: 4:19-CV-429-MW/MAF

(citations and internal quotation marks omitted). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999).

A deliberate-indifference claim contains both an objective and a subjective component. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the need must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." Id. Second, the defendant must have (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. Id. (citing McElligott, 182 F.3d at 1255). Deliberate indifference is the reckless disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994).

"[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment (fails to) support a claim of cruel and unusual punishment." Keohane v. Fla. Dep't of Corr., Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020) (citing Harris v. Thigpen, 941 F.2d 1495,1510 (11th Cir. 1991)). As articulated in Estelle,

Case No.: 4:19-CV-429-MW/MAF

"whether . . . additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment" and "[a] medical decision not to order" additional testing, "does not represent cruel and unusual punishment." 429 U.S. at 107.

The Eleventh Circuit has repeatedly addressed medical care for GD. In Keohane, there was no Eighth Amendment violation where the prison refused to accommodate the inmate's social transitioning requests because this was a matter of differing medical opinions as to the proper course of treatment and the requests presented serious security concerns. "For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, 'or even very good.'" Keohane, 952 F.3d at 1277 (citing Harris, 941 F.2d at 1510). Courts should not second-guess a medical professional's opinion regarding the propriety of a particular course of treatment. See Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); see also Kothmann v. Rosario, 558 F. App'x 907, 911 (11th Cir. 2014) (recognizing gender identity disorder as a serious medical need).

In Kothmann, the Eleventh Circuit found that the following factual allegations were sufficient to state a claim of deliberate indifference to an inmate's GD condition by the defendant medical professional:

> [that] (1) [i]n the medical community, hormone therapy is the medically recognized, accepted and appropriate

Case No.: 4:19-CV-429-MW/MAF

> treatment for GID; (2) [the medical professional defendant] knew of [the plaintiff's] GID diagnosis, his hormone treatment history, and his medical need for continued hormone treatment; and (3) [the medical professional defendant] knowingly refused to provide [the plaintiff] with his medically necessary hormone therapy for his GID.

558 F. App'x at 911. The Kothmann decision presented at the Rule 12(b)(6) stage. However, the Eleventh Circuit refused to decide whether hormone treatment was medically necessary to treat the prisoner's GD or whether other types of treatment would be adequate. Still, the defendant's failure to provide any treatment to the plaintiff was sufficient to support an Eighth Amendment claim because plaintiff alleged facts sufficient to show that hormone treatment was recognized, accepted, and medically necessary treatment for GD. Id.

Where the inmate has received medical attention and the dispute is over the propriety of that course of treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments made. Harris, 941 F.2d at 1507. Moreover, courts facing the same issue involved in this case have consistently held that the Eighth Amendment does not entitle a prison inmate to a particular type of curative treatment [(i.e., estrogen therapy followed by sex reassignment surgery)], for GD. See Maggert v. Hanks, 131 F.3d 670, 672 (7th Cir. 1997).

Case No.: 4:19-CV-429-MW/MAF

Accordingly, if the Eleventh Circuit refused to find hormone treatment or social transitioning accommodations medically necessary in previous cases, then this Court should refrain from making the determination that the issuance of hormones or a sports bra is necessary in this case, much less one that should be directed by an injunctive order upon defendants who are no longer in charge of Plaintiff's medical care now that she is at Charlotte. Plaintiff admits that she received medical care while at Hamilton – psychological/counseling care, a medical pass for a sports bra, and hormone treatment for a period of time. Plaintiff also admitted that Colombani informed her that Castleberry makes the final decision on the course of treatment. ECF No. 1, p. 5. Plaintiff's claim that Colombani improperly discontinued or failed to renew the hormone treatment, without more, is insufficient to state an Eighth Amendment violation under Section 1983. Even if the discontinuation of hormone treatment was "reckless," as put forth by Plaintiff, it is well settled that claims of medical malpractice or negligence are not cognizable under Section 1983:

> an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

> become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-106. Similarly, Plaintiff presents almost no facts against Defendant Gaylord other than she and her family attempted to contact Gaylord about her treatment; and Gaylord did not respond. This is insufficient to state a claim under Section 1983. Plaintiff does not allege that she did not receive care for her GD; in fact, Plaintiff admits she did receive treatment. Nor does Plaintiff allege in her reply to the motions to dismiss that she is being denied medical care for her GD now that she is housed at Charlotte. Of course, if Plaintiff is not receiving medical care for her condition from prison officials at Charlotte, she may file a separate action against the proper parties, subject to a separate case number and filing fees, following the exhaustion of her administrative remedies.

While, the Court is sympathetic to Plaintiff's medical condition, Plaintiff has failed to sufficiently state a claim that Colombani's and Gaylord's actions or inactions amounted to constitutional violations.

### C. Plaintiff's Claims Fail under Eleventh Amendment Immunity and Qualified Immunity.

Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief

sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

The State of Florida is immune from monetary damages based upon the Eleventh Amendment. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986). This is so because the Eleventh Amendment of the U.S. Constitution bars suit against a state in federal court absent valid congressional override, waiver of immunity, or consent to suit. See Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015). Section 1983 does not abrogate state sovereign immunity for damage suits; and Florida has not waived its immunity from § 1983 suits. See id. A state and an agency of a state (i.e. the Florida Department of Corrections) are thus immune from liability under § 1983. See Williams v. Robbins, 153 F. App'x 574, 576 (11th Cir. 2005). Of course, suits for nominal damages against state officers in their official capacities are included in this Eleventh Amendment bar. See Simmons v. Conger, 86 F.3d 1080, 1086

Case No.: 4:19-CV-429-MW/MAF

(11th Cir. 1996) (finding district court erred in awarding nominal damages against a judge sued in his official capacity because the relief was barred by Eleventh Amendment).

Ex parte Young provides a narrow exception to Eleventh Amendment immunity in cases where a party is seeking prospective relief against State officials for violations of federal law. 209 U.S. 123 (1908). Although Ex parte Young allows declaratory relief, this doctrine applies only when the alleged violations are ongoing and not when the relief pertains to past violations of federal law. See Green v. Mansour, 474 U.S. 64, 73 (1985) (sovereign immunity bars claims for declaratory relief because the issuance of such a judgment would have "the same effect as a full-fledged award of damages or restitution by the federal court."). See also Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1337 (11th Cir. 1999) (citing Papasan v. Allain, 478 U.S. 265, 277-78 (1986) and Green, 474 U.S. at 68 ("[T]he *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct.").

Additionally, "qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or

constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). Here, dismissal is appropriate because, as narrated above, Plaintiff fails to allege in her complaint that Defendants' actions or inactions amount to the violation "of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. The Court is not required to accept Plaintiff's legal conclusions as true. Plaintiff has not satisfied her burden.

Defendant Gaylord, as the medical supervisor for the prison, and Defendant Colombani, as a prison doctor, are considered state officials but because Plaintiff does not provide any facts against either Defendant that amount to a constitutional violation, they are immune from suit and the official capacity claims fail. Moreover, Plaintiff seeks an injunction based on

Case No.: 4:19-CV-429-MW/MAF

Defendants' past conduct not ongoing conduct. Accordingly, injunctive relief is not available to Plaintiff.

### D. Plaintiff Cannot Establish Claims against Defendant Gaylord on a Theory of Respondeat Superior.

To the extent Plaintiff's claims raised against Gaylord are pursued under a theory of vicarious liability, "liability under § 1983 may not be based on the doctrine of *respondeat superior*." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000), cert. den'd, 531 U.S. 958 (2000). Instead, a government entity may be liable "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Plaintiff must establish that an official policy or custom was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978). The custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Craig, 643 F.3d at 1310 (citation omitted). Because Plaintiff's allegations present no such facts to support these claims, the *respondeat superior* claims against Gaylord should be DISMISSED.

Case No.: 4:19-CV-429-MW/MAF

## VI.   Conclusion and Recommendation

It is respectfully RECOMMENDED that Defendant Colombani's Motion to Dismiss, ECF No. 39, be GRANTED and Defendant's Gaylord's Motion to Dismiss, ECF No. 40, be GRANTED for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff's request for injunctive relief be DENIED. Finally, it is recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on December 16, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).

Case No.: 4:19-CV-429-MW/MAF